# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

JIM BARACH,

                Plaintiff,

v.                                                   CIVIL ACTION NO. 3:19-0008

SINCLAIR MEDIA III, INC.,
d/b/a WCHS-TV and WVAH-TV,

                Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Compel Arbitration and Dismiss Complaint. ECF No. 5. Defendant argues in its motion that, pursuant to Federal Rule of Civil Procedure 12(b)(3), this action should be dismissed for improper venue because the dispute is covered by a binding arbitration clause in the parties' employment agreement. *See Mot. to Dismiss*, ECF No. 5. Plaintiff, however, argues that Defendant's motion should be denied because the arbitration clause is "substantively unconscionable," as it allegedly denies Plaintiff some of his statutory rights. *See Resp. in Opp. to Def's Mot. to Dismiss*, ECF No. 7, at 3.

The parties have fully briefed the issues and the motion is now ripe for adjudication. As explained below, the Court **GRANTS**, **IN PART**, **and DENIES**, **IN PART**, Defendant's Motion to Compel Arbitration and Dismiss Complaint.

**I. Background**

For thirteen years, Plaintiff worked for Defendant as a chief meteorologist. *See Compl.*, ECF No. 1-1, at ¶¶ 8–9. For at least the first decade of Plaintiff's employment, his employment contract was renewed on a two-year or three-year basis. *See id.* at ¶ 11. However, in July of 2017,

Defendant renewed Plaintiff's contract for only one year. *See id.* at ¶ 13. Plaintiff was approximately sixty years old at the time. *Id.*

In August of 2017, Plaintiff signed the aforementioned employment agreement with Defendant. *See Mem. in Supp. of Def's Mot. to Dismiss*, ECF No. 6, at 1; *Agreement*, ECF No. 5-1. The term of the agreement began on August 1, 2017, and ended July 31, 2018. *See Mem. in Supp. of Def's Mot. to Dismiss*, at 2. The agreement contained an arbitration clause, which provided:

> Employee and Employer agree to submit any dispute or controversy arising out of or relating to this Agreement including, but not limited to, claims of termination allegedly resulting from discrimination of any type, claims based on common law, contract, or statutorily created or protected rights or any other basis prohibited by law, exclusively to final and binding arbitration before a neutral arbitrator.

*See Agreement*, at 9.

In January of 2018, Plaintiff's supervisor allegedly told Plaintiff that Defendant's weather presentation needed to be "younger and hipper." *See id.* at ¶¶ 14-15. Defendant then fired Plaintiff on June 1, 2018, and allegedly replaced him with a thirty-nine-year-old individual. *See id.* at ¶¶ 16–17.

Plaintiff subsequently filed a complaint in the Circuit Court of Cabell County, West Virginia, alleging age discrimination in violation of the West Virginia Human Rights Act and in violation of the federal Age Discrimination in Employment Act of 1967. *See Compl.*, at 10–11. On January 3, 2019, Defendant removed the matter to this Court. ECF No. 1.

**II. Standard of Review**

Arbitration is, "in effect, a specialized kind of forum-selection clause …." *See Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 679 n.2 (4th Cir. 2018) (quoting *Scherk v. Alberto-*

*Culver Co.*, 417 U.S. 506, 519 (1974)). In the past, the Fourth Circuit "treated motions to dismiss based on a forum selection clause as motions to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) …." *BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 n.4 (4th Cir. 2018). However, the Supreme Court later "clarified that a party may *not* seek to enforce a forum selection clause by moving to dismiss for improper venue; instead, 'the appropriate way to enforce a forum-selection clause pointing to a ... foreign forum is through the doctrine of *forum non conveniens*.'"[1] *Id.* (emphasis added) (quoting *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49, 60 (2013)).

However, rather than using the doctrine of *forum non conveniens* to enforce arbitration, a party may *also* move to compel arbitration pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 1 *et seq*. If a party chooses this latter route to compel arbitration, the FAA requires a district court to *stay* the action and direct the parties to proceed to arbitration if the court decides that an arbitration clause covers the dispute.[2] *See id.* at §§ 3–4. Of course, because "Congress did not intend for the FAA to force parties who had not agreed to arbitrate into a non-judicial forum," the FAA allows a party to challenge the enforceability of an arbitration clause in a district court by relying on state contract principles. *See Sydnor v. Conseco Fin. Serv. Corp.*, 252 F.3d 302, 305 (4th Cir. 2001).

When a motion to stay and compel arbitration is challenged, "the applicable legal standard is similar to that applied at summary judgment. Specifically, the pleadings and 'all relevant, admissible evidence submitted by the parties' are considered and 'all reasonable inferences' are drawn in favor of the non-moving party.'" *Meridian Imaging Sol'ns, Inc. v. Omni Bus. Sol'ns LLC*,

---

[1] Defendant disagrees that this rule applies to arbitration clauses, but admits that "the distinction likely means little to the instant case." *See Reply Mem. in Supp. of Def.'s Mot. to Compel*, ECF No. 8, at 2 n.1.

[2] The Court will treat Defendant's motion to compel as a motion to compel arbitration pursuant to the Federal Arbitration Act.

250 F. Supp. 3d 13, 21 (E.D. Va. 2017) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)).

**III. Discussion**

The FAA reflects the "fundamental principle that arbitration is a matter of contract," and "places arbitration agreements on equal footing with other contracts …." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). In the Fourth Circuit, a party may compel arbitration if it demonstrates the following: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

Defendant argues that this action should be dismissed, and arbitration should be compelled, because the four elements above are met. *See Mot. to Dismiss*. While Plaintiff does not dispute that all the elements above are met, he argues that the arbitration clause should not be enforced because it is substantively unconscionable. *See Resp. in Opp. to Def's Mot. to Dismiss*, at 3.

"The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop–sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." *Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250, 283–84 (W. Va. 2011) (reversed on other grounds). "A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." *See id.* at 284 (internal quotations omitted). "A contract term is

unenforceable if it is *both* procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." *See id.* at 289 (emphasis added).

**A. Whether the Arbitration Clause is Procedurally Unconscionable**

Before addressing the merits of Plaintiff's claim that the arbitration clause is substantively unconscionable, Defendant argues that, because "Plaintiff did not allege that the arbitration clause was [also] *procedurally* unconscionable … the clause cannot be held to be unconscionable as a whole …." *See Reply Mem. in Supp. of Def.'s Mot. to Compel*, at 2. The Court agrees.

"The burden of proof rests with the party who seeks to establish a contract term is unconscionable," but Plaintiff has not alleged, either in his complaint or memorandum, *any* facts which would demonstrate procedural unconscionability, or, "inequities, improprieties, or unfairness in the bargaining process and the formation of the contract." *Montgomery v. Credit One Bank, NA*, 848 F. Supp. 2d 601, 607 (S.D.W.Va. 2012); *Brown*, 724 S.E.2d at 285. While the Court notes that "[p]rocedural unconscionability often—but not always—begins with a contract of adhesion," such as the contract in this case, a "[f]inding that there is an adhesion contract is the *beginning point* for analysis, not the end of it." *See Brown*, 724 S.E.2d at 285–86; *State ex rel. Dunlap v. Berger,* 567 S.E.2d 265, 273 (W. Va. 2002) (emphasis added). Thus, because *some* procedural unconscionability must be present for a contract to be unconscionable,[3] and Plaintiff has not alleged even one piece of evidence of procedural unconscionability,[4] the Court must reject

---

[3] Even if this Court were to hold that, due to the "sliding scale" nature of the unconscionability analysis, a contract could theoretically be so substantively unconscionable that it must also be procedurally unconscionable, such a contract does not exist in this case.

[4] For example, Plaintiff has not alleged what his education level is, whether he read the employment

Plaintiff's argument that the arbitration provision is unenforceable for unconscionability reasons.

However, this finding does not end the Court's analysis. While Plaintiff cannot argue that the arbitration provision is unenforceable specifically for unconscionability reasons, this Court may still find aspects of the arbitration provision unenforceable. *See Scovill*, 425 F.3d at 1018. Therefore, the Court will proceed to analyze whether the arbitration clause is unenforceable for reasons other than unconscionability.

**B. Whether the Arbitration Clause is Unenforceable for Other Reasons**

Plaintiff argues that the arbitration clause as a whole is unenforceable, and Defendant's motion should be denied, for three specific reasons: (1) it contains a "fee-shifting" provision; (2) it alters the analytical framework of his statutory claims; and (3) it alters the relief available under his claims. *See Resp. in Opp. to Def's Mot. to Dismiss*, at 4, 7, 11. The Court will address each issue in turn.

**1. Whether the Fee-Shifting Provisions are Enforceable**

Plaintiff first argues that the arbitration clause is unenforceable because its "fee-shifting provision" is inconsistent with the West Virginia Human Rights Act ("HRA") and the Age Discrimination in Employment Act ("ADEA")—the two statutes Plaintiff is suing under. *See Resp. in Opp. to Def's Mot. to Dismiss*, at 4. The Court agrees.

"By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 272 n.3 (W. Va. 2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). Thus, an arbitration provision is not

---

agreement, or whether he knew he could discuss the agreement with his supervisors. *See Scovill v. WSYX/ABC*, 425 F.3d 1012, 1018 (6th Cir. 2005).

enforceable if it "is inconsistent with any substantive rights conferred under" a statute. *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 288 (4th Cir. 2007).

Both the HRA and the ADEA provide substantive rights to damages and attorney fees. Specifically, the HRA states the following:

> In actions brought under this section, the court in its discretion may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the *complainant*.

W. Va. Code § 5-11-13(c) (emphasis added).

Additionally, the ADEA, through incorporation of the Fair Labor Standards Act ("FLSA"), states as follows:

> The court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid *by the defendant*, and costs of the action.

29 U.S.C. § 216(b); 29 U.S.C. § 626 (emphasis added).

Importantly, both statutes contemplate only a losing *defendant* paying attorney fees, and are silent as to whether a losing *plaintiff* may be forced to pay attorney fees. With respect to the ADEA, the Fourth Circuit has clarified that, because of this statutory silence, "an award of attorneys' fees [to defendant] on a statutory basis would be improper." *Andrews v. America's Living Centers, LLC*, 827 F.3d 306, 312 (4th Cir. 2016). With respect to the HRA, the West Virginia Supreme Court has not addressed this issue of statutory silence, but would likely reach the same conclusion as the Fourth Circuit, due to its "longstanding practice of applying the same analytical framework used by the federal courts when deciding cases arising under the W.Va. Human Rights Act especially where the critical language of our Act ... parallels the federal legislation." *Heldreth v. Rahimian*, 637 S.E.2d 359, 365 n.9 (W. Va. 2006) (internal quotations omitted).

Despite these above holdings regarding the ADEA and HRA, the employment agreement in this case contains a provision that requires the losing party—*regardless* of whether it is Plaintiff or Defendant—to pay "all fees and expenses of the arbitration." *Agreement*, at 9. Additionally, the employment agreement contains a provision which states that Defendant, "if the prevailing party" in litigation, "shall be entitled to recover … all of its cost and expenses including, without limitation, reasonable attorney's fees" from Plaintiff. *Id.* Thus, the employment agreement requires Plaintiff to pay all fees and expenses, including Defendant's attorney's fees, if Defendant is the prevailing party, even though "an award of attorneys' fees [to defendant] on a statutory basis would be improper" under the HRA and ADEA. The employment agreement provision regarding payment of fees and expenses is therefore clearly "inconsistent" with the HRA and the ADEA. Notably, Defendant does not address the issue of inconsistency anywhere in its reply. *See Reply Mem. in Supp. of Def.'s Mot. to Compel*, at 2–4. Therefore, because the provisions in the employment agreement which require Plaintiff to pay any of Defendant's expenses, costs, or fees associated with the litigation are inconsistent with the HRA and ADEA, those provisions are unenforceable in this case.

**2. Whether the Analytical Framework of an HRA or ADEA Claim is Altered**

Next, Plaintiff argues that the arbitration clause is unenforceable because it prevents him from "effectively vindicating his statutory cause of action in the arbitral forum," as "it alters the analytical framework of an HRA or ADEA claim." *See Resp. in Opp. to Def's Mot. to Dismiss*, at 7, 10.

Under what is referred to as the "pretext method," Courts have the same three-step process for determining liability under both the HRA and ADEA.[5] *See Mereish v. Walker*, 359 F.3d 330,

---

[5] There is an additional method for determining liability under the ADEA, called the "mixed motive" method, but that is not applicable to this case. *See Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004).

334 (4th Cir. 2004); *Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 194 (W. Va. 2016). First, courts look to see whether the plaintiff has asserted a prima facia case of discrimination. *See id*. If this first step is satisfied then the court moves to the second step, where the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the negative action taken against the complainant. *See id*. Finally—and particularly relevant in this case—if this second step is met, the third step requires that the plaintiff prove that the employer's reason was pretextual. *See id.*

The arbitration clause in this case states that, "if the arbitrator is satisfied that [Plaintiff] did engage in the conduct complained of," the arbitrator must "uphold the action taken by [Defendant]." *Id.* Plaintiff argues that this clause "impinges on the arbitrator's analytical process," because "there is no opportunity for Mr. Barach to resuscitate his case by showing that the proffered 'conduct complained of' was mere pretext for discrimination,"—the third step in the pretext method. *See Resp. in Opp. to Def's Mot. to Dismiss*, at 10. The Court disagrees that the clause necessarily forecloses that opportunity.

The Sixth Circuit already addressed this very issue involving the same provision in *Scovill v. WSYX/ABC, Sinclair Broadcast Group, Inc.*,[6] and held that it was inappropriate for the district court to find the provision at issue unenforceable. *See id.* at 1019. The Sixth Circuit reached this conclusion after relying on the Supreme Court's decision in *PacifiCare Health Sys., Inc. v. Book*,[7] where the Supreme Court held that, when an arbitration provision is open to interpretation and an arbitrator could interpret it in such a way as to avoid violating the parties' rights, a court should leave that interpretative decision to the arbitrator. *See id.* at 406–07. The Sixth Circuit found that

---

[6] 425 F.3d 1012 (6th Cir. 2005).
[7] 538 U.S. 401 (2003).

the arbitration provision at issue in this case is open to interpretation, and an arbitrator could interpret it in such a way as to avoid violating the parties' rights, stating:

> The employer may well have included the provision only to guarantee that the specific disciplinary action the employer imposed would be upheld. For example, the employer may have wanted to ensure that a suspension without pay for thirty (30) days, would not be reduced to a ten (10) day suspension or, that a discharge not be reduced by the arbitrator to suspension without pay. There is nothing in the language of this provision that suggests that it was intended to alter an employee's prima facie case under the ADEA. The language in the provision only requires that the arbitrator uphold the employer's actions.

*Scovill*, 425 F.3d at 1019.

Because the Sixth Circuit believed that "the arbitrator may interpret this provision in such a way as to avoid infringing upon the Plaintiff's rights," it reversed the district court's decision, and held that "the district court should have left interpretation of this provision to the arbitrator subject to review after arbitration." *See id.*

Plaintiff does not dispute any of these facts, or that *Scovill* is directly applicable to this case, but rather argues that the Sixth Circuit's reasoning "misses the mark." *See Resp. in Opp. to Def's Mot. to Dismiss*, at 11. In support, Plaintiff asserts the following:

> [The Sixth Circuit's] alternative reading of the standard-augmenting provision has nothing to do with the burden-shifting analytical framework—it bears only upon the relief that can be afforded by the arbitrator. Indeed, at bottom, the [Sixth] Circuit's alternative explanation is that "[t]he language in the provision only requires that the arbitrator uphold the employer's actions." *Id.* But that jumps way ahead to remedies such as reinstatement, and remedies by definition come *after* a plaintiff has proven his case by showing pretext, which the [Sixth] Circuit acknowledges is prohibited by the standard-augmenting provision. *Id.* Pursuant to the plain language of the arbitration clause, if the employer can show that the employee engaged in the alleged conduct then the analysis stops and the employee is not permitted to establish that the employer's alleged legitimate non-discriminatory reason is pretextual.

*Id.*

Based on this argument, the Court believes that it is Plaintiff who "misses the mark" on the Sixth Circuit's reasoning. First, Plaintiff claims that "the [Sixth] Circuit acknowledges [that a plaintiff showing pretext] is prohibited by the standard-augmenting provision," but the Sixth Circuit makes no such concession. Second, Plaintiff asserts that, "[p]ursuant to the plain language of the arbitration clause, if the employer can show that the employee engaged in the alleged conduct then the *analysis* stops." To the contrary, the Sixth Circuit held that the provision at issue may be stating nothing about pretext, and may not actually be a "standard-augmenting provision." Precisely to Plaintiff's point, it is the Sixth Circuit's position that the provision at issue may *only* be referring to remedies or discipline, and may have nothing to do with the burden-shifting analytical framework, or even specifically the ADEA.[8] After all, the same paragraph also states that the "Arbitrator shall determine the prevailing party," and lays out the allocation of fees. *See Agreement*, at 9. Thus, it would be entirely consistent for this provision to be interpreted as clarifying that, if Defendant is the prevailing party—*after the standard analytical framework for a specific claim is applied*—the arbitrator may not alter the specific action of firing Plaintiff merely because the arbitrator finds that he or so would not have done so. This reading of the provision is further supported by the fact that, under the three-part analytical framework of the ADEA, whether Plaintiff actually "engage[d] in the conduct complained of" is completely irrelevant,[9] yet this act is a condition of the arbitrator upholding Defendant's action.

---

[8] It is important to remember that the arbitration paragraph at issue makes no reference to a discrimination claim or the ADEA.

[9] *See Laing v. Federal Exp. Corp.*, 703 F.3d 713, 722 (4th Cir. 2013) ("when an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or *even correct*, ultimately, so long as it truly was the reason for the plaintiff's termination.") (emphasis added) (internal quotations omitted).

Thus, while it is possible that Plaintiff's interpretation of the clause at issue is correct, and that it "impinges on the arbitrator's analytical process," it is also possible that the arbitrator could interpret the clause as only addressing remedies, and find that the employer "included the provision only to guarantee that the specific disciplinary action the employer imposed would be upheld." Therefore, the Court declines to hold that the provision is unenforceable, and will leave the interpretation of this provision to the arbitrator, subject to review after arbitration.

### 3. Whether the Relief Available Under an HRA or ADEA Claim is Altered

Finally, Plaintiff argues that the same provision discussed in the preceding section should be unenforceable because it also "restricts the relief available to Mr. Barach under the HRA and the ADEA." *See Resp. in Opp. to Def's Mot. to Dismiss*, at 11–13. For the same reasons discussed previously, the Court disagrees, declines to hold that the provision is unenforceable, and will leave the interpretation of the provision to the arbitrator, subject to review after arbitration.

**C. Severability**

Lastly, Plaintiff implicitly argues that, because the Court finds the fee-shifting provisions unenforceable, the arbitration clause as a *whole* is unenforceable. *See Resp. in Opp. to Def's Mot. to Dismiss*, at 4, 7, 11. However, because the employment contains a severability clause,[10] and there is no evidence that the unenforceable fee-shifting provision goes to the "essence" of the contract,[11] the appropriate remedy is to sever *only* the fee-shifting provisions, and hold that the remaining clauses are enforceable. *See In re Cotton Yarn*, 505 F.3d at 292 (holding that, "if the district court concludes that the [provision] is unenforceable, the district court must then consider whether severance of the … provisions, rather than invalidation of the arbitration agreements,

---

[10] *See Agreement*, at 9.
[11] *See Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675–76 (4th Cir. 2016) (holding that "an unenforceable provision cannot be severed when it goes the "essence" of the contract.").

would be the appropriate remedy."). Thus, despite the unenforceable fee-shifting provision, the agreement to arbitrate remains enforceable.

**IV. Conclusion**

Based upon the analysis provided above, the Court **GRANTS**, **IN PART**, **and DENIES**, **IN PART**, Defendant's Motion to Compel Arbitration and Dismiss Complaint. ECF No. 5. Additionally, the Court **STAYS** the action and **DIRECTS** the parties to proceed to arbitration.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: June 3, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE